## McDonald *v.* The State of Indiana.

[No. 21,402.   Filed June 3, 1909.]

1. COURTS.—*Rules of.*—*Adoption of.*—Rules of practice in courts should be published in permanent form and be obtainable by all, so-called oral rules being insufficient.  p. 396.

2. TRIAL.—*Impaneling Jury.*—*Challenges.*—*When to be Exercised.* —A defendant who has passed the jury twice has no absolute right, on the third opportunity, of challenging a juror who was passed on the two previous occasions, especially where no showing is made that the causes of challenge either did not exist, or were not known to him, on the former occasions.  pp. 396, 398.

3. TRIAL.—*Jury.*—*Challenge of Array.*—*Statutes.*—At the common law, a challenge to the array could be interposed only when the entire jury was present; and our statute (§2101 Burns 1908,

Acts 1905, pp. 584, 634, §230) presupposes that the entire jury shall be present when the right of challenge is exercised. p. 397.

4. NEW TRIAL.—*Instructions.—Appeal.*—Where an alleged erroneous instruction was not made a ground for a motion for a new trial, it will not be considered on appeal. p. 401.

5. APPEAL.—*Instructions.—Evidence Not in Record.*—Where there is no showing that certain questioned instructions were the only ones given, or where the evidence is not in the record, such instructions cannot be considered injurious unless they would be erroneous on any supposable evidence in the case. p. 401.

6. EVIDENCE.— *Phosphorus.— Nature of.— Conspiracy.— Criminal Law.*—In a prosecution for conspiracy to defraud an express company by shipping a package alleged to contain valuable papers, but really containing phosphorus and other materials so arranged that when the materials should become dry the phosphorus would ignite, evidence of the nature of phosphorus is admissible. p. 401.

From Criminal Court of Marion County (37,342) ; *James A. Pritchard,* Judge.

Prosecution by The State of Indiana against Eugene F. McDonald. From a judgment of conviction, defendant appeals. *Affirmed.*

*Clifford C. Kealing,* for appellant.

*James Bingham,* Attorney-General, *Alexander G. Cavins, Edward M. White* and *William H. Thompson,* for the State.

MYERS, J.—Appellant was convicted on an indictment charging him and another with conspiring for the purpose and with the intent unlawfully, feloniously and designedly to defraud the Adams Express Company, by preparing a package, securely wrapped, which package contained, among other things, two damp sponges, excelsior and damp phosphorus, so arranged that when sufficiently dried the phosphorus would ignite and cause such package and its contents to be burned and consumed; that, in pursuance of the conspiracy, they delivered the package to said express company to be transported from Indianapolis, Indiana, to Louisville, Kentucky, and falsely represented that the package contained papers of the value of $10,000; that the conspirators intended, by the preparation of such package, and

its delivery to the express company, that the contents of the package, while in possession of the company, should become sufficiently dry to ignite, burn and destroy the package, and to claim to have been damaged in the sum of $10,000, and fraudulently and unlawfully to make demand upon the company therefor, and cheat and defraud the latter by obtaining money from such company by virtue of such false pretenses.

The only error assigned is upon the overruling of the motion for a new trial.

The questions sought to be presented arise upon alleged error in refusing the peremptory challenge of a juror on his *voir dire,* and in giving instructions. The evidence is not in the record. A bill of exceptions discloses that in impaneling the jury, when the jury had been passed back to the defendant's counsel for reëxamination for the third time, and defendant had used but three peremptory challenges, being entitled to ten, the defendant peremptorily challenged a juror who had been in the jury box from the time the impaneling of the jury began, and the challenge was disallowed, "for the reason that, under a rule of said court, which had been in existence for many years, the defendant's peremptory challenge was made too late," said rule was stated by the court at the time as follows: "That each side, the defendant and the State, is entitled to examine each juror twice, and challenge, if desired, but cannot challenge a juror after the jury has been passed twice with each juror in the box. Said rule is an oral rule, and is not entered in the records of the court, but has been regularly enforced for many years." It is further recited that the defendant and his attorney, at the time of the challenge, did not know of the rule, but they did not inform the court on being advised of such rule that either or both of them were ignorant of it, and did not ask that it be suspended, nor that an exception be made to its enforcement, on account of such ignorance. We

think it quite clear that there can properly be no such
1.   thing as an oral rule of a court.   Rules of court, when
legally adopted and promulgated, have the effect of
positive laws.   §1443 Burns 1908, §1323 R. S. 1881; *Magnu-
son* v. *Billings* (1899), 152 Ind. 177; *State* v. *VanCleave*
(1902), 157 Ind. 608; *Smith* v. *State, ex rel.* (1894), 137
Ind. 198; 11 Cyc., 742.

They ought not only to be formally promulgated, but they
should be definitely stated, which could not be true of a
practice reposing solely in the breast of a judge.   They
should be published and made known in some permanent
form, so that they might be known to all.   The so-called rule
was clearly not a rule at all, and binding upon no one—
clearly not upon one who has no notice of it.   The statutory
provision (§2099 Burns 1908, Acts 1905, pp. 584, 634, §228)
is as follows: ''In prosecutions for capital offenses, the de-
fendant may challenge, peremptorily, twenty jurors;   in
prosecutions for offenses punishable by imprisonment in the
state prison, ten jurors; in other prosecutions, three jurors.
When several defendants are tried together, they must join
in their challenges.''

Irrespective of the so-called rule, was appellant denied a
statutory right?   No provision is made by statute nor by rule
as to how or when the right shall be exercised, and it
2.   is claimed by appellant that it may be done at any
time until the jury is sworn.   In some jurisdictions
the passing of a juror after he has been examined, tendered
to and accepted by the other party, is a waiver of the right
to challenge.   In others, the right to challenge is in the
sound discretion of the court.   In others, a party who ac-
cepts a juror with knowledge of an objection waives the ob-
jection, but if a cause of objection is afterward discovered
it is not waived, unless he is guilty of negligence in not dis-
covering the objection.   24 Cyc., 322, 323.   There is no show-
ing made that appellant did not know from the beginning
the grounds for the peremptory challenge, and he stands here

upon the bare proposition that he was entitled to the challenge in any event, without offering any excuse to the court, or making any request for exemption or relief from the local practice. Had any request for exemption upon the ground that the so-called rule was void, or that the appellant or his counsel had no knowledge of it, been made, or if any reason were shown why the juror twice passed by appellant as satisfactory had been discovered to be unacceptable, a different question would be presented, for, independently of the so-called rule, appellant shows no ground for relief from his own act and acquiescence.

We think it cannot be said that the right of challenge is denied where it is restricted to a defined number of opportunities for challenge, nor that there must be a definite rule fixing the time when, or the manner in which, it must be exercised, for we think it may be controlled either by a fixed rule, or by any reasonable limitation imposed in any specific case, so long as the right of peremptory challenge is not taken away; in other words, that, when reasonable opportunity is given to challenge, the spirit of the statute is complied with, and that it does not mean that the right is an open one at all times until the jury is sworn, irrespective of all else; that there is no good reason why there may be speculation as to what the opposite party may do, and the jury passed backward and forward to await the action of the adversary; that the statute means that when the jury is passed to a party he must challenge peremptorily if he would challenge, in the absence of an after-arising condition, and that, when the opportunity was twice given, as here, and not exercised, a party cannot complain, unless new conditions arise, calling for an exception to, or relaxation of, the practice or the order in the particular case, and that if a given practice, not rising to the dignity of a rule, is invoked, as here, one to be exempt from its operation, on account of his ignorance of it, 3. must seasonably apply to be relieved from its operation. At common law no challenge to the array or

panel could be made until the full jury was present.    1
Chitty, Crim. Law (4th Am. ed.), *544. Our statute (§2101
Burns 1908, Acts 1905, pp. 584, 634, §230) was evidently
adopted with this practice in mind, and the right to chal-
lenge contemplated the right to challenge as the panel thus
full stood, or as it might stand, and not that the right should
be one arising out of indefinitely passing the jury as accept-
able.

In *Ward* v. *Charlestown City R. Co.* (1883), 19 S. C. 521,
45 Am. Rep. 794, after a plaintiff had announced that she
had no objection to the jury, the defendant challenged
2.    two jurors, and plaintiff then claimed the right of
· peremptory challenge.  The court said: "There was
no denial on the part of the court; on the contrary the right
was tendered to her at the proper time, and having waived
the exercise of it then, for the reasons given by the circuit
judge, we think it was too late to demand it after the defend-
ant had exercised his right." It is said in *Mayers* v. *Smith*
(1887), 121 Ill. 442, 448, 13 N. E. 216: "Under the prac-
tice at common law, no such case would arise as is here pre-
sented, of a party reserving his power of peremptory chal-
lenge until after he had examined and passed upon the whole
twelve jurors, or eight of them, for causes of challenge, and
then to claim the exercise of such right of peremptory chal-
lenge as to jurors who had previously been passed upon and
accepted, for the reason that the practice there was to re-
quire each juror to be sworn when his examination was com-
pleted."

In *State* v. *Potter* (1846), 18 Conn. 166, a talesman
was called and examined by the counsel for defendant as to
his bias, or for cause of challenge, and no objection appear-
ing the court informed defendant's counsel that they could
challenge him peremptorily.  They declined to exercise the
right at that time, as the panel was not full, and after it
was full they challenged the juror peremptorily, and the
court inquired whether any cause then existed which did

not exist when they first declined the right.   They answered
in the negative, and the court held that the challenge came
too late, and this ruling was upheld.   The reasoning, which
is pertinent here, is as follows:   ''Again, it is said, the pris-
oner has been deprived of a right to a peremptory challenge,
which he was entitled to.   It is not denied that time and op-
portunity were given to the prisoner to challenge a juror;
but it is claimed, that he had not all the time the law allows ,
him.   Dickerman, a talesman, had been examined, and there
was no cause of challenge known against him.   The court
then told the counsel, if they intended a peremptory chal-
lenge, they must make it at that time.   They then had a
reasonable opportunity to make their challenge; but they
claim they may make it at their own time, provided it is done
before the jurors are sworn.   The statute, it is said, gives
them power to challenge peremptorily twenty jurors sum-
moned and impaneled,—and much criticism has been had
upon the word 'impaneled.'   It is claimed, that it means the
jury sworn to try the cause; and that until sworn, they are
not impaneled.   *   *   *   But it is said, that by the English
practice, the party has a right to challenge until the jury is
sworn.   There, each juror is sworn, as soon as he has been
examined and opportunity given for challenge.   By our
practice, jurors are none of them sworn until all have been
examined, and an opportunity offered for challenge.''

Under the statute of Arkansas, the state in criminal cases
is required to exhaust its challenges before passing a jury
to the defendant, and it was held that when the state had
passed a jury to the defendant it was error to permit a per-
emptory challenge by the state.   *Williams* v. *State* (1897),
63 Ark. 527, 39 S. W. 709.

Where, upon impaneling a jury, the judge announced that
he would require the defendant to make his challenges as he
desired, to each juror as called, it was held not error to re-
fuse a peremptory challenge after the juror was sworn and
accepted, and it was held that, when there was a fair oppor-

tunity to interpose a peremptory challenge, the defendant cannot complain of a refusal to be allowed the further exercise of the right. *People* v. *Carpenter* (1886), 102 N. Y. 238, 6 N. E. 584.

We are not unaware that in the earlier cases in this State and in other states it is held that the right of challenge continues up to the swearing of the jury, but we are unable to perceive that any substantial right of a defendant is invaded when an opportunity for challenge of the full number is afforded and it is not availed of up to the time the jury is sworn. The object to be attained is an impartial jury, and while the right of peremptory challenge is an absolute one, it is not, we think, so far so that it may be exercised under all conditions. If, by the introduction of new men upon the panel, a cause for challenge should arise— such as the coming on of a person at such enmity to one already passed that they could not work in harmony, or the introduction of anything which might prejudice the right of a defendant—he would have a clear right to exercise his preference, and challenge the man already acceptable, rather than the new man, and the right would thus be preserved until the full panel is complete and the jury sworn. He has a right to a full panel to begin with, the right of canvass and comparison among jurors, and if his full right of challenge is preserved, within the line here indicated, it is practically a right of peremptory challenge until the jury is sworn, but it does not follow that the opportunity must be open under all circumstances or conditions, for it is a right which may be waived. Neither do we understand that the rule here declared is in conflict with the earlier holdings of the court, which upon examination are found to be general declarations as to the right of peremptory challenge extending until the jury is sworn, and did not involve any question of practice as to the mode of conducting the impaneling of juries, and of exercising the right of challenge, or of the

right and power of courts to direct the manner of its exercise.

Complaint is made of the giving of instruction two. No question as to the giving of the instruction was presented by the motion for a new trial. Objection is also made to instructions ten and eleven. There was no request for written instructions, and there is no showing that the instructions set out were all the instructions given ·in the cause, and without the evidence we cannot disturb the judgment on account of those instructions, unless they were irrelevant and incorrect upon any supposable state of facts given in evidence. Neither ·of the instructions is set out in appellant's brief, as required by the rule of this court, but we have examined them from the record. Instruction ten is quite as favorable to appellant as he could ask. The objection made to it is that it uses the expression, "and that phosphorus is a substance that when exposed to air will begin to burn." It will readily be discerned that it would have been proper to show by evidence the nature and properties of phosphorus.

As to instruction eleven, certain language is referred to which the instruction does not contain. Counsel probably refers to instruction ten, and objects that it does not use the word "friction" in connection with the words "exposed to air," as a cause for ignition. We cannot know what the evidence was on the subject. No reversible error is shown, and the judgment is affirmed.